IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE E. ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-3062-CV-S-ODS-SSA |
| ) | |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born March 26, 1981, has a high-school education and has past work experience as a manicurist, a veterinary technician, and a receptionist. Plaintiff alleges she became disabled on March 1, 2008, due to abdominal pain, intestinal and digestive distress and back and leg pain due to a herniated disc.

Plaintiff received treatment at St. John's Regional Health System in 2007 and 2008. R. 410-79. On June 13, 2007, Plaintiff reported she was taking hydrocodone and it was noted that Plaintiff "unfortunately had some aberrant behaviors with unsanctioned increases of her medications which she ascribes to stress management." R. 476. On March 20, 2008, Plaintiff had her gallbladder removed and underwent an exploratory laparoscopy, which revealed damage to the bile duct. R. 466. Post-operatively Plaintiff developed abdominal pain with a bile leak. R. 447-48. Plaintiff underwent multiple procedures including endoscopic retrograde cholangiopancreatography ("ERCP") with

sphincterotomy and plastic biliary stent placement and repeat ERCP with plastic biliary stent exchange.

Thomas Briggs, M.D. treated Plaintiff from July 26, 2007 to November 9, 2007. Plaintiff was seen four times due to low back pain with the impression of herniated lumbar disk with radiculopathy. R. 338-39, 341, 345. Dr. Briggs recommended that Plaintiff have surgery. R. 338.

Sadie Holland, D.O., treated Plaintiff who reported low back pain on November 12, 2007. R. 485. Plaintiff reported that she had a laminectomy in 2000 and a repeat laminectomy in 2006. *Id.* Dr. Holland's assessment was postlaminectomy syndrome, epidural fibrosis, and diskogenic pain. *Id.* Dr. Holland recommended decreasing the amount of Tylenol and hydrocodone that Plaintiff was taking. *Id.* On March 22, 2010, Plaintiff reported constant abdominal pain that is tolerable until there is a bad flare up. R. 258. Dr. Holland's assessment was epigastric abdominal pain. R. 260.

Robert Johnson, M.D., treated Plaintiff from March 3, 2008 to April 10, 2008. On March 3, 2008, Plaintiff was initially seen due to a twenty-six pound weight loss along with abdominal pain. R. 336. The impression was abdominal pain with nausea and vomiting and associated weight loss with possible superior mesenteric artery syndrome. Plaintiff called Dr. Johnson's several times reporting pain, nausea, vomiting, and diarrhea. R. 325-29, 331, 334. On April 10, 2008, Dr. Johnson noted that Plaintiff was admitted to the hospital per another doctor's request due to a possible bile leak. R. 323. She was treated at Barnes Jewish Hospital from June 4, 2008 to June 10, 2008 for a bile leak. R. 386.

Michael Good, M.D., treated Plaintiff from May 19, 2009 to March 26, 2010 for back pain, hypothyroidism, acute pharyngitis, possible chronic pancreatitis, abdominal pain, acute sinusitis, allergic rhinitis, depression, anxiety, and panic disorder. R. 267, 280, 283, 290. On February 3, 2010, Plaintiff denied vomiting or bowel movement changes, only reporting decreased appetite. R. 279. On March 26, 2010, Plaintiff reported to Dr. Good that she had not taken her prescribed hydrocodone for two weeks. R. 266.

On February 10, 2010, Plaintiff was seen by Charles Woodall III, M.D., for chronic abdominal pain and questionable pancreatitis following the gallbladder surgery

2

from two years ago. R. 250. Plaintiff reported having intermittent abdominal pain with attacks once every three months. R. 251. Dr. Woodall ordered for Plaintiff to undergo a magnetic resonance cholangiopoancreatography in order to help diagnose and treat Plaintiff's problems. R. 252. On February 22, 2010, again saw Dr. Woodall wrote that Plaintiff had lost her job since her last visit with him because she was so nauseated. R. 246. Dr. Woodall noted that Plaintiff did not get her magnetic resonance cholangiopancreatography done because she missed her appointment. R. 246. Dr. Woodall re-ordered her magnetic resonance cholangiopancreatography. R. 247. Her pain medications were refilled and Dr. Woodall told her that they would not be refilled again. *Id.*

Plaintiff was treated at Cox Medical Center from February 25, 2010 to April 30, 2010. R. 481-82, 484. On April 19, 2010, Plaintiff saw a dietician. R. 481. Plaintiff reported a weight change due to pancreatitis-increased abdominal pain, nausea, vomiting, and diarrhea. R. 481. Plaintiff's diet history revealed that she consumed "very little intake due to no appetite-depression from father passing away." R. 481.

Dennis Robinson, D.O., treated Plaintiff on twelve occasions between April 12, 2010 and June 17, 2011. R. 299, 301, 347-53. Plaintiff's acute complaint was prescription refills. *Id.* Dr. Robinson primarily refilled Plaintiff's prescriptions for irritable bowel syndrome, low back pain, chronic pancreatitis. R. 299, 301, 349-53. Plaintiff was treated for chronic pancreatitis on six of the eleven visits. R. 299, 301, 349, 351-52 Plaintiff was treated once for hypothyroidism on March 15, 2011, and on her last three visits (April 1, 2011; May 18, 2011; and June 17, 2011) Plaintiff was only seen for endometriosis. R. 347-49.

On September 14, 2011, Dr. Robinson completed a chronic pancreatitis questionnaire. R. 408. He opined that Plaintiff has severe, persistent upper abdominal pain and that her pain was credible. *Id.* In answering whether the pain was of a severity to prevent work and caused the inability to focus or concentrate in the work place, Dr. Robinson answered "at times." *Id.* Dr. Robinson said it was "unknown" on an average month how many days Plaintiff would miss work due to severe pain affecting either physical or mental ability to work. *Id.* Finally, Dr. Robinson circled two responses

3

on the questionnaire to note that Plaintiff also suffered from associated complications of pancreatic acitis and systemic inflammatory response. *Id.*

C. Kenneth Bowles, Ph.D., a Disability Determination Services consultant, filled out a Psychiatric Review Technique form on August 3, 2010. R. 305. Dr. Bowles opined that Plaintiff had no medically determinable mental impairments. *Id.*

At the administrative hearing, Plaintiff testified that her medications make her sleepy and that her prescribed hydrocodone makes her sick to her stomach. R. 40. She testified that she left her job because of chronic pancreatitis. R. 43. Plaintiff testified that her hypothyroidism does not affect her ability to work at all and that she was able to work after having two lumbar laminectomies. R. 44-45. Plaintiff testified that she has diarrhea daily, heart burn and vomiting, and suffers from abdominal pain. R. 45, 48. She spends 2-3 hours every morning in the bathroom with diarrhea. R. 62, 63. Her back pain gets worse with lifting, squatting, or doing anything on a constant basis. R. 52. She testified she could lift a gallon of milk, but could not comfortably lift a 12 pack of soda. R. 53. Plaintiff can sit or stand for 45 minutes to an hour before needing change positions. R. 54-55. Plaintiff grocery shops usually with some assisted help. R. 55. She does the laundry, loads the dishwasher, and sweeps the floor. R. 65. Plaintiff prepares meals two to three times a week, attends church every Sunday, but sometimes has trouble sitting through the hour-and-a-half service, and uses the computer for online banking, searching the web, and getting on Facebook. R. 65-67.

At step one of the five-step sequential process, the administrative law judge ("ALJ") determined that Plaintiff had not engaged in substantial gainful activity since February 24, 2010. R. 15. At step two, the ALJ found Plaintiff has the following severe impairments: herniated lumbar disc; back and leg pain due to herniated disc; abdominal pain; and intestinal and digestive distress. R. 15. At step three, the ALJ determined Plaintiff's ailments do not meet or equal a listed impairment. R. 16. At steps four and five, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 416.967(a), in that she is able to lift up to 10 pounds occasionally; frequently list and/or carry objects like docket books, files, and small tools; stand and/or walk up to 2 hours out of an 8-hour workday; sit up to 6 hours out of an 8-hour workday; and may perform unlimited

4

pushing and pulling. In addition, the claimant is unable to climb ladders, ropes, or scaffolds. She is limited to no more than occasional exposure to vibration or hazards (machinery and heights). In addition, the claimant must be allowed to change position from sitting to standing every 45 minutes, as needed.

R. 17. Next, the ALJ found, based on the VE's testimony, Plaintiff is capable of performing past relevant work as a manicurist and receptionist. R. 20. Finally, the ALJ concluded that Plaintiff is not disabled. R. 20.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991) (citing *Hutsell v. Sullivan*, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A. The ALJ Properly Weighed Dr. Robinson's Opinion

Plaintiff argues the ALJ erred by giving little weight to the medical opinion of Dr. Robinson. The Court disagrees.

The ALJ has the responsibility to assess a claimant's RFC based on all the relevant evidence. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). A treating physician's opinion will be given controlling weight if it is not inconsistent with the other substantial evidence in the record and is well-supported by medically acceptable clinical

5

and laboratory diagnostic techniques. *Woods v. Astrue*, 780 F.Supp.2d 904, 912 (E.D. Mo. 2011) (citing *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). "While a treating physician's opinion is usually entitled to great weight, the Eighth Circuit has cautioned that it 'does not automatically control, since the record must be evaluated as a whole.'" *Id.* (quoting *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995)). Accordingly, a treating physician's opinion can be discounted where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). The ALJ must give "good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ assigned less than great weight to Dr. Robinson's opinion because "it is conclusory, vague as to functional limitations, and unsupported by his own treatment records and the other medical evidence of record. " R. 19. The Court finds that the ALJ gave good reasons for not assigning controlling to Dr. Robinson's opinion. Dr. Robinson's treatment notes and medical evidence of record are inconsistent with Dr. Robinson's opinion. Dr. Robinson completed a chronic pancreatitis questionnaire on September 14, 2011. R. 408. He opined Plaintiff's pain is "at times" of a severity to prevent work and causes the inability focus or concentrate in the work. *Id.* However, Dr. Robinson did not elaborate in the questionnaire and simply wrote "unknown" when answering on average month how many days would Plaintiff miss work due to severe pain affecting either physical or mental ability to work. *Id.* Plaintiff made no complaints related to her alleged pancreatitis during her last three visits with Dr. Robinson. R. 347-48. No other medical provider placed long-term restrictions on Plaintiff or opined she is physically unable to work. The ALJ also pointed out that Dr. Robinson did not include any information supporting his opinion and only circled two alleged complications but did not provide a description of the complications as requested on the face of the form. R. 408. The Court finds that the ALJ properly gave Dr. Robinson's opinion limited weight because of his conclusory statements. *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (ruling that an ALJ may give a treating physician's opinion limited weight when it provides only conclusory

6

statements). Accordingly, the Court finds that the ALJ properly assigned less than great weight to Dr. Robinson's opinion.

## B. The ALJ Properly Formulated the RFC Determination

Next, Plaintiff argues the ALJ failed to properly analyze Plaintiff's RFC by not explaining what medical and nonmedical evidence was utilized. The Court disagrees.

Plaintiff points to Social Security Ruling 96-8p, contending that the ALJ failed to follow the appropriate analysis. The Social Security Ruling states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustain work activities in an ordinary work setting on a regular and continuing basis . . . , and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Social Security Ruling 96-8p.

Here, the record contains substantial evidence to support the ALJ's RFC determination. The ALJ provided a narrative describing Plaintiff's medical history as well as the nonmedical evidence in the record including Plaintiff's daily activities and an assessment of Plaintiff's credibility. R. 18-20. The ALJ found that Plaintiff had the RFC to perform sedentary work, except those jobs that required climbing ladders, ropes, or scaffolds, more than occasional exposure to vibration or hazards (machinery and height), and no option to change position from sitting to standing every 45 minutes, as needed. R. 17. The ALJ discussed Plaintiff's testimony regarding how much she could lift and how long she can sit, stand, and lie down. R. 18. The ALJ noted that no treating provider placed any long-term restrictions on Plaintiff's physical activities or opined that she is physically unable to work. R. 19. Finally, the ALJ properly explained the inconsistencies between Plaintiff's testimony and the medical evidence of record, as well as the opinion of Dr. Robinson that was unsupported by his own treatment records

7

and other medical evidence of record. R. 19. The Court finds that the ALJ properly formulated the RFC determination.

## C. The ALJ Properly Weighed Plaintiff's Credibility

Plaintiff also contends the ALJ improperly analyzed her credibility. The Court disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.* An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Guilliams*, 393 F.3d at 801.

Here, there is substantial evidence in the Record to support the ALJ's finding that Plaintiff's descriptions of the symptoms and limitations are generally inconsistent and unpersuasive and that her statements are not credible to the extent they are inconsistent with the RFC. First, Plaintiff failed to comply with various doctors' orders by not taking prescribed medications and missing medical appointments. R. 246, 266. Medical providers also refused to refill prescribe narcotic pain medications and noted her aberrant behaviors. R. 247, 476.

Next, Plaintiff reported worse symptoms during the administrative hearing than she reported to her doctors. For example, at the hearing, Plaintiff testified that she spent 2-3 hours every morning in the bathroom with diarrhea. R. 62-63. However, she reported to doctors that only had abdominal pain attacks once every three months. R. 251. Further, although Plaintiff alleges disabling pain, she reported to Dr. Holland that

8

even though her abdominal pain was constant, it was tolerable until there was a flare up. R. 258. The ALJ also properly took into account that no treating source had ever placed long-term restrictions on Plaintiff's physical activities or opined that she was unable to work. *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician . . . submitted a medical conclusion that [claimaint] is unable to perform any type of work.").

Plaintiff's daily activities are inconsistent with her assertion of disability. Plaintiff testifies she cooks meals two to three days a week. R. 65. Plaintiff testified she uses the computer for banking, email, and Facebook. R. 66-67. She sews, attends church on Sunday, and sometimes attends her children's sporting events. R. 66-67. Plaintiff reads magazines, watches television, and watches movies with her kids. R. 60. Plaintiff runs errands and does the laundry, loads the dishwasher, cleans the dishes, and sweeps the floor. R. 62, 65. Plaintiff reported that she has no trouble sleeping or taking care of herself. R. 64. "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).

Finally, Plaintiff's work history undermines her credibility. Plaintiff had inconsistent and often low earnings prior to her alleged disability onset date—Plaintiff had no reported earnings at all from 2002-2005, and earned less than $1000 for each of the years from 1999 through 2001. R. 175. "[A] claimant's financial motivation may contribute to an adverse credibility determination when other factors cast doubt upon the claimant's credibility." *Ramirez v. Barnhart*, 292 F.3d 576, 581 n.4 (8th Cir. 2002). Further, Plaintiff reported she became disabled in March 2008, but reported earnings in 2008 of $6,459, and earnings in 2009 of $13,480.83. R. 175. "Work performed during any period in which Plaintiff alleges that [she] was under a disability may demonstrate an ability to perform substantial gainful activity." *Jaco v. Astrue*, No. 08-0482-CV-W-GAF, 2009 WL 648907, at *3 (W.D. Mo. March 11, 2009).

Although it may be that any one of these factors alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision—particularly given that the primary responsibility for the assessment is

9

Case 6:12-cv-03062-ODS   Document 14   Filed 01/28/13   Page 9 of 10

with the ALJ and not the Court. Accordingly, the ALJ properly assessed Plaintiff's credibility.

IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: January 28, 2013

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT